UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MICHAEL S. SPINKS,

                          Plaintiff,              04-CV-6349

            v.                                    **DECISION**
                                                  **and ORDER**

INVESTIGATOR RON REINSTEIN, individually
and in his capacity as an officer and
employee of the City of Rochester and/or
the Rochester Police Department;
INVESTIGATOR C.J. DOMINIC, individually
and in his capacity as an officer and
employee of the City of Rochester and/or
the Rochester Police Department;
INVESTIGATOR GLENN WEATHER, individually
and in his capacity as an officer and
employee of the City of Rochester and/or
the Rochester Police Department; CITY OF
ROCHESTER; and ROCHESTER POLICE DEPARTMENT,

                          Defendants.
_____

## INTRODUCTION

        Plaintiff Michael S. Spinks ("plaintiff") brings this action

alleging that Investigator Ron Reinstein ("Reinstein"), Investigator

C.J. Dominic ("Dominic"), Investigator Glenn Weather ("Weather"),

the City of Rochester (the "City") and the Rochester Police

Department ("RPD") (collectively "defendants") violated his

constitutional rights by falsely arresting and maliciously

prosecuting him for the murder of Richard Cooper. Plaintiff also

claims that he was subjected to false imprisonment and violations

of his civil rights pursuant to 42 U.S.C. § 1983.[1]

_____

        [1]Plaintiff originally filed his Summons and Complaint in the Supreme Court of New York,
Monroe County. On or about July 26, 2004, defendants removed the action to the United States District
for the Western District of New York.

Defendants move for summary judgment claiming that there are no material facts in dispute, and that they are entitled to judgment as a matter of law since plaintiff has failed to state a viable cause of action against them. Specifically, defendants claim that plaintiff can not establish a claim for false arrest, false imprisonment, or malicious prosecution because defendants have established as a matter of law that there was probable cause to arrest plaintiff. Plaintiff points to the fact that he was not indicted by a Grand Jury and that the Grand Jury "no-billed" the charges against him. Accordingly, plaintiff asserts there was no probable cause to arrest him. In support of defendants' claim, they argue that because plaintiff is unable to establish that the Grand Jury indictment was procured by fraud the presumption of probable cause stands, and plaintiff cannot make a claim for false arrest, false imprisonment, or malicious prosecution. Defendants further argue that because they have not acted improperly, plaintiff's claims for violations of his civil rights must be denied.

For the reasons set forth below, I grant the defendants' motion for summary judgment, and dismiss plaintiff's complaint.

## BACKGROUND

On August 27, 2002, at approximately midnight, Richard Cooper ("Cooper") was shot and killed in front of Rochester General Hospital at a bus stop at Portland Avenue in the City of Rochester. Cooper was with his girlfriend Marshona Atterberry ("Atterberry") at the bus stop and she witnessed the shooting. Shortly before the

shooting, Cooper had been treated and released for wounds he received from a bite to his neck in a fight with Worda Spinks ("W. Spinks"). W. Spinks is Atterberry's ex-boyfriend and the father of her daughter. Soon after the shooting, defendants Dominic and Reinstein, homicide investigators with the RPD, interviewed Atterberry. According to Atterberry's testimony, the assailant was wearing dark clothing, a dark baseball cap, and something pulled over his face so that "only the area around his eyes" was visible. Atterberry also stated that she saw the assailant flee the scene and enter a black Ford Taurus station wagon owned by W. Spinks.[2]

On October 3, 2002, Investigators Reinstein and Dominic again interviewed Atterberry. During that interview, Atterberry indicated that based on her recollection of the assailant's eyes and the way he walked, she believed that plaintiff was the shooter. On the basis of this information, defendants showed Atterberry a photo array of six (6) individuals with only the eye area visible. Atterberry identified the photo of plaintiff as the shooter. Based upon the information received by defendants, plaintiff was arrested on October 11, 2002 and the people filed a Felony Complaint against plaintiff for murder in the Second Degree the next day. A preliminary hearing was held on October 17, 2002 before Rochester City Court Judge Thomas Rainbow Morse. At the conclusion of the preliminary hearing, Judge Morse found "based on the testimony,

---

[2]Atterberry informed Dominic that on August 27, W. Spinks and Cooper were involved in two altercations prior to the shooting and that on both occasions W. Spinks was driving the same black Ford Taurus.

including the identification, as well as other circumstantial evidence ... adduced at [the] hearing, there is sufficient basis" to hold plaintiff Spinks for action by the Grand Jury. On March 20, 2003, a Grand Jury dismissed the charges against plaintiff and the charges were terminated as of that date.

Plaintiff claims that in Atterberry's statement to investigators on August 27, 2002, she failed to mention any details concerning the assailant's eyes or anything about the manner in which he walked. In addition, plaintiff claims that although at the time of the shooting Atterberry could only see the eyes and complexion of the assailant, the photo array included the picture of the plaintiff with "his nose, eyebrows, upper lip and nearly all of his forehead" visible. Plaintiff asserts he should not have been included in the photo array. Plaintiff also states that Investigator Dominic spoke with Geraldine and Worda Spinks, Sr. (plaintiff's parents) and told them that he knew their son did not commit the murder, but believed he was withholding information and so they arrested him in order to pressure him to release the information. Plaintiff, claims that because defendants lacked probable cause to arrest him, he should not have been arrested, held in police custody, or prosecuted for murder.

Defendants contend in their reply papers[3] that the affidavits of Geraldine and Worda Spinks, Sr. should be stricken. Defendants assert that they served documents demands on plaintiff requesting "all oral or written statements ... made by ... any of the individually named defendant officers" relating to the incident or claims alleged in this case. Plaintiff responded that he had no knowledge of any statements made by defendants. However, in spite of the discovery response, plaintiff has introduced the affidavits of plaintiff's parents for the first time in opposition to defendants' motion for summary judgment. It is clear that the allegedly incriminating statement contained in the affidavits were responsive to defendants' discovery demands requesting all oral or written statements by defendants and thus should have been produced in response by plaintiff. Defendant asserts that based upon plaintiff's failure to produce the alleged statement by Investigator Dominic in discovery, the affidavits of Geraldine and Worda Spinks, Sr. should be stricken and disregarded by this Court.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

---

[3]Defendants assert that pursuant to Local Rule 7.1(c), plaintiff's opposition papers were due no later than May 15, 2006, which is eight business days before the return date. Instead, defendants were served with plaintiff's responsive papers on May 19, 2006. Thus, defendants argue that because plaintiff's opposition papers were untimely, they should not be considered by this Court.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering whether a genuine issue of fact exists for purposes of a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. <u>See</u> <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54 (2d Cir. 1997). It is only if after considering the evidence in the light most favorable to the non-moving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>See</u> <u>Annis v. County of Westchester</u>, 136 F.3d 239 (2d Cir. 1998).

## II.  **False Arrest, False Imprisonment, Malicious Prosecution, and Civil Rights Claims**.

### A.  **Legal Standards**

#### 1.  **False Arrest and False Imprisonment**

Plaintiff alleges that his arrest on October 11, 2002, and subsequent detention constituted false arrest and false imprisonment under New York law.  The elements required to state a claim of false arrest or false imprisonment under New York law are identical. <u>Blanchfield v. State of N.Y.</u>, 104 Misc. 2d 21, 24 (Ct. of Claims 1980).  To state a claim for false imprisonment or false arrest under New York law, a plaintiff must establish that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff did not consent to the confinement; (3) the plaintiff was aware that he was confined; and (4) the confinement was not otherwise privileged,

such as confinement pursuant to a warrant or with probable cause or immunity protection. <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 13 (2d Cir. 1998) (false imprisonment claim); (citing <u>Zanghi v. Inc. Village of Old Brookville</u>, 752 F.2d 42, 45 (2d Cir.1985); <u>Bernard v. U.S.</u>, 25 F.3d 98, 102 (2d Cir 1994) (false arrest claim).

### 2.   **Malicious Prosecution**

Plaintiff alleges that the prosecution of the Murder charge against him in the Second Degree was unwarranted and constituted malicious prosecution. To state a claim for malicious prosecution under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." <u>Russell v. Smith</u>, 68 F.3d 33, 35 (2d Cir. 1995); <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2d Cir. 1997). A claim of malicious prosecution in violation of a person's federal civil rights is analyzed under the same standard as a common law malicious prosecution claim. <u>Cook v. Sheldon</u>, 41 F.3d 73, 79 (2d Cir. 1994); <u>Easton v. Sundram</u>, 947 F.2d 1011, 1017 (2d Cir. 1991).

### 3.   **Civil Rights Claims**

Plaintiff alleges that as a result of the false arrest, false imprisonment, and malicious prosecution against him, he was denied his federal Constitutional rights in violation of 42 U.S.C. § 1983. "A Section 1983 claim for false arrest, resting on the Fourth

Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2nd Cir. 1996).

**B.** **Plaintiff's false arrest and false imprisonment claims are barred because there was probable cause to arrest plaintiff on the charge of Second Degree Murder**.

To state a claim of false arrest, false imprisonment, or the violation of a plaintiff's civil rights resulting from false arrest or false imprisonment, a plaintiff must establish that the arresting officer lacked probable cause to arrest and/or confine the plaintiff. "Probable cause to arrest 'constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983.'" <u>Mandina v. City of Yonkers</u>, 1998 WL 637471 at *3 (S.D.N.Y. 1998)(citing <u>Weyant</u>, 101 F.3d at 852 (internal citation omitted)). Probable cause to arrest is also a complete defense to a claim of false imprisonment. <u>Zanghi</u>, 752 F.2d at 45. With respect to a claim for malicious prosecution, a finding of probable cause to arrest will serve as a defense to a malicious prosecution claim in the absence of evidence that authorities became aware of or suppressed exculpatory evidence subsequent to the plaintiff's arrest but prior to prosecution. <u>Williams v. City of New York</u>, 2003 WL 22434151 (S.D.N.Y. 2003).

"Probable cause [to arrest] exists where officers 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable

caution in the belief that the person arrested has committed or is committing a crime.'" Mandina, 1998 WL 637471 at *3 (quoting Weyant, 101 F.3d at 852). This is an objective standard, and where there are no material issues of fact in dispute, a claim of false arrest, false imprisonment, malicious prosecution, or violation of civil rights based on any of those actions may properly be disposed of on motion for summary judgment. Parkin v. Cornell Univ., 78 N.Y.2d 523, 529 (1991). Probable cause to prosecute exists where there are "facts and circumstances [that] would lead a reasonably prudent person in like circumstances to believe [that the criminal defendant is] guilty." Colon v. City of New York, 60 N.Y.2d 78, 82 (1983)(citations omitted). "In fact, the eventual disposition of the criminal charges are irrelevant to the probable cause determination." Hahn v. County of Otsego, 820 F.Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir. 1995) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)).

Here, assuming the facts in the light most favorable to the plaintiff, I find that there are no material questions of fact in dispute, and that as a matter of law, there was probable cause to arrest and prosecute the plaintiff on Murder charges. There was probable cause to arrest plaintiff because the police had information from an eye witness, Atterberry, that based on her recollection of the assailant's eyes and the way he walked, she believed that plaintiff was the shooter. Moreover, this information was reasonably trustworthy because Atterberry identified the photo

of plaintiff as the shooter after defendants showed her a photo array of six individuals with only the general eye area visible.

It is well established that probable cause to arrest a suspect exists when a crime victim identifies the suspect. "Both New York State and federal courts have held that a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest." Donovan v. Briggs, 250 F.Supp.2d 242, 251-252 (W.D.N.Y., 2003)(Larimer, J.).   In the absence of information to suggest that the witness' information is not credible, the witness' identification of the suspect will establish probable cause to arrest that suspect.   Id. at 252, citing Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999).

Probable cause to arrest will attach even if the eyewitness is mistaken about a suspect's identity. "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Mazza v. City of New York, 1999 U.S. Dist Lexis 13192, *13-14 (E.D.N.Y. 1999)(quoting Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994). In this case, even assuming that plaintiff was not any where near the bus stop where Cooper was shot on August 27, 2002, probable cause for his arrest existed because Atterberry told investigators that she recognized the shooter's manner of walking and his eyes and identified him as Michael Spinks. Plaintiff has failed to submit any evidence that Atterberry acted in bad faith or lied to police, and therefore, even if Atterberry was mistaken, and

even if plaintiff was not in fact present at the bus stop at the time of the shooting, it was reasonable for the police to act on Atterberry's complaint and arrest plaintiff.

Plaintiff, however, argues that Atterberry did not identify any single particular characteristic of the assailant when she was interviewed by investigators. Plaintiff claims that it was not until a month later that Atterberry was able to describe the assailant's manner of walking and the fact that she was "89% sure it was [plaintiff]" who was the shooter. See Ex. B to Aff. of Christopher S. Ciaccio, Esq., Preliminary Hearing Transcript p. 96:25-97:(4). In addition, plaintiff asserts that although at the time of the shooting Atterberry could only see the eyes and complexion of the assailant, the photo array shown to her included the picture of the plaintiff showing not just his eyes but virtually his entire face. Thus, plaintiff claims that his arrest was based solely upon an "unduly suggestive" photo array, which violates his Fourth and Fourteenth Amendment rights.

Plaintiff's argument is unavailing precisely because Atterberry stated the day before she was shown a photo array that she was 89% certain that plaintiff shot Cooper. See id. Further, contrary to plaintiff's assertions, the photo array shown to Atterberry did not highlight any distinguishing characteristics of plaintiff versus the photographs of the other individuals. In addition, Atterberry's written statement and testimony at the preliminary hearing held on October 17, 2002 indicate that she

recognized the assailant's walk as that of plaintiff. In fact, City Court Judge Morse found that based on the testimony, which included the identification, as well as other circumstantial evidence adduced at the hearing, there was sufficient basis to hold plaintiff for action by the Grand Jury. The fact that a Grand Jury dismissed the charges against plaintiff on March 20, 2003 does not mean that the defendants had no probable cause to arrest plaintiff.

The probable cause inquiry focuses only on the facts available to the arresting officer at the time of the arrest. Ricciuti v. New York City Transit Auth., 124 F.3d 123 (2d Cir. 1997), citing, Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996). Information from individuals such as the putative victim or eyewitnesses may provide probable cause. See e.g., Martinez v. Simonetti, 202 F.3d 625 (2d Cir. 2000), citing, Miloslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351 (S.D.N.Y. 1995), aff'd, 993 F.2d 1534 (2d Cir. 1993). The fact that plaintiff ultimately was not indicted does not negate the possibility that probable cause that existed at the time of the arrest. See e.g., Johnson v. City of New York, 401 F. Supp. 50 (S.D.N.Y. 1975) (the fact that plaintiff was not indicted did not establish false arrest and imprisonment claims).

Accordingly, I find, as a matter of law, that plaintiff's arrest was supported by probable cause because defendant had sufficient knowledge, or reasonably trustworthy information, to support a person of reasonable caution in believing that plaintiff committed the crime of Murder in the Second Degree. Because the finding of probable cause is a complete defense to plaintiff's

claims for false arrest and imprisonment, defendant's motion for summary judgment is granted and the complaint is dismissed.

**C.** **Plaintiff's Malicious Prosecution Claims Are Barred Because There Was Probable Cause To Arrest And Prosecute Plaintiff On The Second Degree Murder Charge**.

The only issues of contention for purposes of evaluating plaintiff's claims of malicious prosecution are whether or not defendants had probable cause to arrest or prosecute plaintiff and whether or not the defendants' actions were motivated by malice. Since I have found that plaintiff's arrest was supported by probable cause, the only issue remaining is whether any malice was involved. Plaintiff argues that Dominic spoke with Geraldine and Worda Spinks, Sr. and told them that he knew their son was not guilty and that plaintiff's arrest was a pretext to put pressure on him to come forward with evidence the defendants believed he had. Consequently, plaintiff states that at the very least, the affidavits of Geraldine and Worda Spinks, Sr. create a question of material fact as to whether defendants acted maliciously.

With respect to the affidavits provided by plaintiff's parents, it is clear that this is the first time, in opposition to a motion for summary judgment, that plaintiff has revealed this information. Defendants served document demands on plaintiff in March 1995. The definitions to the Document Demands provide that:

> c. "Communication" shall mean to state the date, communicator, communicatee, or any other person or persons present at, or overhearing the communication, **and the nature and substance of the communication, and shall include any oral,** written or visual contact between two or more persons

wherein any information or document was exchanged between two or more persons.

(emphasis supplied).

Request Number 4 in defendants' document demands requested

**All oral _or_ written** statements (in either narrative or testimonial form), **made by or on behalf of ... City of Rochester or any of the individually named ... officers which relate to ...incidents and/or claims alleged in the Complaint.**

(emphasis supplied). Plaintiff responded in May 2005 that "[t]here are no oral or written statements of defendants." As a result, plaintiff stated that he did not have knowledge of any statements by defendants and as such defendants relied upon plaintiff's response. However, despite this declaration, plaintiff now for the first time introduces the affidavits of Geraldine and Worda Spinks, Sr. dated May 18, 2006 in opposition to defendants' summary judgment motion.

These affidavits claim that an investigator, who they "believe" to be Dominic, made a statement to each of them that "we know [plaintiff] didn't do it, but he is holding back information and we arrested him to put pressure on him to come forward with the information." See May 18, 2006 Affidavits of Geraldine and Worda Spinks, Sr. at ¶¶ 5 and 6 respectively. The alleged incriminating statement by someone Geraldine and Worda Spinks, Sr. "believed" to be Investigator Dominic contained in the affidavits were clearly responsive to defendants' discovery request, which asked for all

**oral** or written statements by defendants and thus should have been produced in response to discovery demands.

Defendants argue that when this discrepancy was brought to plaintiff's attention, plaintiff claimed the alleged statement contained in the affidavits had been sufficiently disclosed in a separate interrogatory response. In a separate interrogatory regarding witnesses in response to a separate request, plaintiff stated:

> Plaintiff expects the following persons to provide testimony relevant to the incident alleged in the Complaint ...
>
> Geraldine Spinks ... It is expected that she will testify as to conversations she had with police investigators regarding the whereabouts of [plaintiff] at the time of the shooting, and as to statements made by police to her regarding their beliefs as the [plaintiffs] responsibility.
>
> Worda Spinks, Sr. ... It is expected that he will testify as to conversations he had with police investigators regarding the whereabouts of [plaintiff] at the time of the shooting, and as to statements made by police to him regarding their beliefs as the [plaintiff's] responsibility.

See Ex. C ¶ 7 to May 30, 2006 Aff. of Matthew D. Brown. Accordingly, defendants assert that plaintiff's vague interrogatory response to an interrogatory concerning witnesses and factual allegations, not the specific request for alleged oral statements by defendants, fails to justify the false response by plaintiff that "[t]here are no oral or written statements of defendants."

This Court agrees with defendants and finds that plaintiff's interrogatory response does not state the nature or substance of the alleged statement by defendants, or identify the person who allegedly made the statement. Further, plaintiff's response to

defendants' discovery demand does not even cross-reference to the interrogatory response. Rather, the discovery response unequivocally states that plaintiff has no oral statements by defendants. Moreover, plaintiff's purported knowledge of statements made by an individual "believed" to be Dominic was never disclosed by plaintiff nor did plaintiff ever amend his discovery response as required by Rule 26(e)(2). <u>See</u> Fed.R.Civ.P. 26(e)(2) and 37(c)(1). Thus, the affidavits of Geraldine and Worda Spinks, Sr. will not be considered by this Court and will be stricken from the record.[4]

For the reasons stated above, I find that there was probable cause to arrest the plaintiff on the Murder charge. Moreover, except for the questionable affidavits, there is no evidence that the authorities became aware of any exculpatory information that would have resulted in a lack of probable cause to prosecute the plaintiff. Accordingly, I grant defendants' motion for summary judgment with respect to plaintiff's malicious prosecution claims, and dismiss those claims.

### D.    **Plaintiff's Section 1983 Civil Rights Claims are Barred**

Plaintiff claims that several of his constitutional rights were violated by the defendants acting under color of state law. Specifically, plaintiff claims that his rights under the Fourth and Fourteenth Amendments to the Constitution were violated by defendants' malicious prosecution, false arrest, and false

---

[4]Except for these two affidavits, plaintiff has not submitted any other evidence that would controvert Atterberry's claim that she believed in good faith plaintiff was the shooter.

imprisonment of plaintiff.  As stated above, however, I find that plaintiff has failed to state a claim for malicious prosecution, false arrest, or false imprisonment.  Accordingly, I grant defendants' motion for summary judgment with respect to plaintiff's civil rights claims.

### III. <u>Plaintiff Cannot Establish Municipal Liability Absent A Custom, Policy or Practice</u>

It is well settled that a municipality may be held liable as a "person" for constitutional deprivations under § 1983.  <u>Monell v. Dept. of Soc. Serv.</u>, 436 U.S. 658, 690-91 (1978). To establish municipal liability in a § 1983 action, the plaintiff must "first prove the existence of a municipal policy or custom . . . [and] [s]econd, . . . must establish a causal connection— an affirmative link— between the policy and the deprivation of his constitutional rights." <u>Vippolis v. Village of Haverstraw</u>, 768 F.2d 40, 44 (2nd Cir. 1985)(citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n. 8). A plaintiff may establish the existence of a policy or custom by submitting evidence of the policy itself, or by "establishing that responsible supervisory officials acquiesced in a pattern of unconstitutional conduct by subordinates." <u>Dove v. Fordham Univ.</u>, 56 F.Supp.2d 330, 336 (S.D.N.Y. 1999).

There is no evidence that plaintiff's rights were violated pursuant to a municipal policy or custom.  Nor is there evidence that any municipal policymaker adopted any policy attributable to the City. Indeed, in his opposition papers, plaintiff has not

produced evidence of any City policy or custom, let alone a relationship between such a policy and action by the City that affect the plaintiff. Accordingly, plaintiff's claims against the City are dismissed.

### IV.  **Qualified Immunity**

The individual defendants are protected from liability by qualified immunity, an affirmative defense that shields government officials performing discretionary functions from liability for damages in certain situations.  Even if probable cause to arrest plaintiff did not exist, defendants are entitled to qualified immunity if either: (a) it was objectively reasonable for them to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met. See Lennon v. Miller, 666 F.3d 416, 423 (2d Cir. 1995); Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (If it was objectively reasonable for the officer to believe that his conduct did not violate a constitutional right, then he is entitled to the protection of the qualified immunity defense).

Based on defendants' investigation and the information received from Atterberry's statement, it was objectively reasonable for defendants to believe that probable cause to arrest plaintiff existed. Moreover, none of the individual defendants had any reason to believe that Atterberry was less than credible.  Accordingly, because a rational jury could not find that defendants' judgment was so flawed that no reasonable officer would have made a similar choice, plaintiff's complaint is dismissed. See generally, Lennon,

66 F.3d at 420 (summary judgment on qualified immunity grounds is appropriate when no reasonable jury could conclude that it was objectively unreasonable for defendant to believe that he was acting in a manner that did not violate an established federally protected right).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted, and plaintiff's claims are dismissed with prejudice.


ALL OF THE ABOVE IS SO ORDERED.

                              s/Michael A. Telesca
                              MICHAEL A. TELESCA
                         United States District Judge


Dated:    Rochester, New York
          January 23, 2007